UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
COLORADO CAPITAL

                Plaintiff/Counter Defendant

  -vs.-

CHARLES OWENS

                Defendant/Counter Plaintiff
                Third Party Plaintiff

  -vs.-

PROVIDIAN FINANCIAL CORP.;
GOLDEN WEXLER & SARNESE;
ARS NATIONAL SERVICES INC.;
NATIONWIDE CREDIT INC.

                Third Party Defendants
----------------------------------------------------------------x

CV–03-1126 (JS) (WDW)

DECLARATION
SUPPORTING
SUMMARY JUDGMENT
FOR NATIONWIDE

        Lawrence Banigan, Esq., pursuant to 28 U.S.C. 1746, declares the following under penalty of perjury:

        1.  I am an associate with Hill & Associates, third party defendant Nationwide Credit Inc.'s (hereinafter "Nationwide") counsel in the above captioned action. My declaration is based on Janet De Young's (Nationwide's Director of Compliance) supporting affidavit, my review of Owens' third party Complaint against Nationwide, my review of Nationwide's archive concerning Owens and the first hand results I obtained via discovery in the above captioned action.

        2. The Court should grant Nationwide summary judgment against Owens' negligence claim for all, any one, or any combination of the following reasons: Owens' claim against Nationwide is barred by New York's Statute of Limitations for negligence; **no** one from Nationwide ever spoke directly with Owens; Nationwide did **not** cause Owens to suffer any embarrassment or humiliation; during the time period Owens cited in his Complaint, Nationwide properly trained and supervised its collection agents; Owens did **not** suffer any discernible damages.

3. A memorandum of law is **not** necessary because Nationwide's summary judgment motion does **not** raise any novel or major questions of law; the Court need only apply the facts to well settled law.

### OWENS' CLAIM AGAINST NATIONWIDE IS BARRED BY NEW YORK'S STATUTE OF LIMITATIONS FOR NEGLIGENCE

4. For all collection accounts, including Owens, Nationwide maintains an activity log and a standard list of abbreviations to code entries in the log. (De Young Affidavit, paragraphs 2-4; Nationwide Exhibits "A," "B") Nationwide prepares its activity logs contemporaneously; each time a Nationwide collection agent attempted to contact Owens, he/she recorded what activity – call his home, send a letter, *etc.* – was untaken and what the result was. (De Young Affidavit, paragraphs 2-6; Nationwide Exhibit "A")

5. Nationwide's first attempt to contact Owens was an attempted telephone call to his home on September 13, 2000; its last attempt to contact Owens was a standard form letter on December 14, 2000. (De Young Affidavit, paragraphs 5 & 6; Nationwide Exhibit "A") Nationwide's last attempted telephone contact with Owens occurred on November 10, 2000. (De Young Affidavit, paragraph 5; Nationwide Exhibit "A")

6. Although he knew as early as October 9, 2003 that Nationwide was one of the collection agencies Providian retained to collect his debt, Owens filed his Summons & Complaint against Nationwide on March 9, 2004. (Nationwide Exhibits "C," "D")

7. In answering Nationwide's interrogatories and Rule 56.1 Statement Owens conceded that he did **not** keep any document, record or recording noting the time and substance of the telephone calls he purportedly received from Nationwide. (Nationwide Exhibit "E," int. 3c & 3g; Nationwide Exhibit "F," stmt. 1 &2) He also conceded that he could **not** recall the exact dates of the last telephone calls Nationwide purportedly made to his home or workplace. (Nationwide Exhibit "E," int. 3b) He conceded that neither of his two witnesses had any direct knowledge about the identity of any debt collection agent[s] that purportedly called him. (Nationwide Exhibit "F," stmt 8; "G," adm. 3 & 8) He also conceded that his two purported witnesses did **not** keep any document, record or recording noting the

time and the substance of the telephone calls they purportedly fielded from Nationwide. (Nationwide Exhibits "F," stmt. 7; "G," adm. 2 & 7)

8. Owens based his time frame for Nationwide entirely on Providian counsel's October 8, 2003 letter, wherein counsel stated that Providian retained Nationwide from September 2000 through April 2001. (Nationwide Exhibits "C"; "D," para. 54; "H," para. 7 & 9) Providian's retention of Nationwide is **not** akin to Nationwide engaging in actual collection efforts during that entire time frame; moreover, it is **not** akin to Nationwide actually being in contact [via telephone or otherwise] with Owens during that time frame. At his EBT, Owens admitted that he "[could **not**] remember when the calls began and when they ended." (Nationwide Exhibit "I," page 31)

9. New York has a three year Statute of Limitations for negligence; the time is computed from the date of the negligent act. **CPLR 203(a) & 214**. In its Answer Nationwide raised New York's Statute of Limitations as its second affirmative defense against Owens' claim. Inasmuch as Owens does **not** have any evidence or recollection to refute the data Nationwide contemporaneously recorded in its activity log – listing the last attempted contact as occurring in December 2000, over three years before Owens joined Nationwide as a defendant – the Court should dismiss Owens' claim against Nationwide as time barred.

## NO ONE FROM NATIONWIDE EVER SPOKE DIRECTLY WITH OWENS

10. As per Nationwide's activity log, **no** one from Nationwide ever spoke directly with Owens. (De Young Affidavit, para. 5; Nationwide Exhibit "A") On one call an unidentified female answered but refused to take any message; on three other calls an unidentified respondent besides Owens took a message for Owens to call Nationwide; the remaining seven calls were busy signals, no answer, or an invalid number. (De Young Affidavit, para. 5 & 8; Nationwide Exhibit "A") All of Nationwide's attempted contacts were directed to Owens' home; Nationwide **never** attempted to contact Owens at his workplace. (De Young Affidavit, para. 5,6, 8; Nationwide Exhibit "A") Owens **never** returned any call; he **never** answered any form letter. (De Young Affidavit, para. 8; Nationwide Exhibit "A")

11. During discovery Owens conceded that he could **not** recall the words or substance of any telephone call he purportedly received from Nationwide. (Nationwide Exhibits "F," stmt. 11; "I," page 36-37) Again, he conceded that he did **not** keep any notes or make any recording of any telephone call he purportedly received from Nationwide. (Nationwide Exhibits "E," int. 3c & 3g; "F," stmt. 1& 2) Again, he also conceded that neither of his two witnesses kept any notes or made any recordings of any telephone calls they purportedly fielded from Nationwide. (Nationwide Exhibits "F," stmt. 7; "G," adm. 3 & 8) At his EBT he conceded that he did **not** know whether he personally received calls from Nationwide or ARS. (Nationwide Exhibit "I," page 34, 36, 49)

12. Owens did **not** have caller ID in 2000 and 2001. (Nationwide Exhibits "F," stmt. 15; "I," page 48) At his EBT Owens stated that "the constant ringing was at home" - he would hang up and let the telephone ring without picking it up. (Nationwide Exhibit "I," page 47-49) At work, receptionist Carol Bartolotta purportedly screened his calls – Owens admitted that she did **not** keep any document, record or recording noting the substance of any telephone call she purportedly fielded from Nationwide. (Nationwide Exhibits "E," int. 5; "F," stmt. 7; "I," page 49) Owens admitted that **neither** of his two witnesses – receptioneist Carol Bartolotta and supervisor Ann Wysocki - had any direct knowledge about the identity of any debt collection agent that purportedly called Owens. (Nationwide Exhibit "F," stmt. 8) When pressed to explain how he could tell who was calling, Owens answered that he did **not** know if the caller was from ARS or Nationwide – he just assumed it. (Nationwide Exhibit "I," page 49)

13. Owens' claim against Nationwide rests entirely on harassing telephone calls he purportedly received from Nationwide. (Nationwide Exhibit "D," para. 54-58; "H," para. 7)  Owens' claim against Nationwide regarding telephone calls he purportedly received from Nationwide cannot survive when all available evidence manifests that he **never** spoke with any Nationwide agent. Assumptions are insufficient for sustaining a claim.

**NATIONWIDE DID NOT CAUSE OWENS TO SUFFER**
**ANY EMBARASSMENT OR HUMILIATION**

14. Owens centered his damage claim against Nationwide on being embarrassed and humiliated before his co-workers. (Nationwide Exhibits "D," para. 60; "I,"

page 45-46, 58)  During discovery, Owens admitted that any family member's, colleague's or co-worker's knowledge of the identity of the debt collectors purportedly calling him and the substance of those purported calls came solely from Owens' himself. (Nationwide Exhibits "F," stmt. 8, 9, 10; "I," page 40, 88-89)

15. Assuming *arguendo* that Nationwide's agents actually spoke with Owens, Nationwide nevertheless would **not** be liable for invading Owens' privacy or dignity because it was solely Owens himself who disseminated the particulars of his debtor/creditor situation to his family, colleagues and coworkers.

## NATIONWIDE PROPERLY TRAINED AND SUPERVISED ITS COLLECTION AGENTS

16. Owens' negligence claim against Nationwide rests entirely upon his assertion that Nationwide failed to properly train and supervise its collection agents. (Nationwide Exhibit "D," para. 61-62)

17. Affiant Janet De Young, the person overseeing Nationwide's training program for its collection agents, including the years 2000 and 2001, detailed the mandatory, comprehensive training program all of its collection agents undergo. (De Young Affidavit, para. 9-11) The training includes the entire FDCPA and all state collection statutes and regulations. (De Young Affidavit, para. 9) Once Nationwide's collection agents complete their initial training, they have two weeks of supervised, on the job training. (De Young Affidavit, para. 10) Even after becoming collection agents, Nationwide requires its agents to undergo and pass refresher courses every three months. (De Young Affidavit, para. 11)

18. With its interrogatories, Nationwide served Owens with a copy of the affidavit Ms. De Young gave to support Nationwide's previous motion to dismiss, wherein Ms. De Young outlined Nationwide's training and supervision program. (Nationwide Exhibits "E," int. 8; "J")   Nationwide interrogatory #8 instructed Owens to, in light of Ms. De Young's affidavit, detail Nationwide's failure to properly train and supervise its employees. (Nationwide Exhibits "E," int. 8; "J") Owens merely gave a conclusory answer: "defendant obviously failed to properly train their employees or in the alternative failed to supervise them." (Nationwide Exhibit "E," int. 8)

19. Nationwide's contemporaneous activity log shows that Nationwide made all of its attempted telephone calls to Owens during the hours permitted by federal, state and local law. (Nationwide Exhibit A") The log also shows that Nationwide **never** made more than one attempted telephone contact on any one day. (Nationwide Exhibit "A")

20. At his EBT Owens admitted that other than one purported call wherein a woman stated he would continue getting calls until he paid his debt to Providian, he could **not** recall the substance of any telephone call he purportedly received from ARS or Nationwide. (Nationwide Exhibits "F," stmt. 11; "I," page 36-37) Owens admitted that **none** of the collection agents who purportedly called him threatened physical harm or used profanities; he also admitted that **none** of the purported calls impersonated an attorney or a public official. (Nationwide Exhibits "F," stmt. 19; "I," 38-40) He admitted that his claim was based solely on the number of calls Nationwide purportedly made – **not** the content of the respective calls. (Nationwide Exhibits "F," stmt. 20; "I," page 40)

21. Owens' conclusion that he purportedly became upset because Nationwide must have failed to properly train and/or supervise its collection agents is insufficient to support his negligence claim.

## OWENS DID NOT SUFFER ANY DISCERNIBLE DAMAGES

22. Damages are a necessary element for a negligence claim. Regarding embarrassment, mental anguish and the like, courts will **not** award damages for mere "threats, annoyances or petty oppressions or other trivial incidents which must necessarily be expected and are incidental to modern life, no matter how upsetting." *E.g., Zimmerman v. Carmack,* 739 N.Y.S.2d 430, 431 (2nd Dep't 2002)

23. Owens' claim for damages is entirely confined to embarrassment and mental anguish. (Nationwide Exhibit "F," stmt. 13; "I," page 53) Again, Owens admitted that he could recall the substance of only one telephone call – in that call an unidentified woman merely stated that he would continue getting calls until he paid his debt to Providian. (Nationwide Exhibits "F," stmt. 11; "I," page 36-37) In any event, Owens admitted that his claim was based solely on the number of telephone calls he purportedly received from ARS

and Nationwide – **not** the content of the respective calls. (Nationwide Exhibits "F," stmt. 20; "I," page 40]

24. Owens' citation of *Johnson v. State* (in his March 21, 2006 letter answering Nationwide's, ARS' and Providian's Rule 56.1 Statements) is inapposite. In *Johnson*, the claimant received a false report that her mother had died, a recognized exception to the rule requiring an objective manifestation supporting the claim of a mental injury. *Johnson v. State*, 372 N.Y.S.2d 638, 640-42 (Ct. Appeals 1975). The underlying incident in *Johnson* caused the claimant to miss eleven days of work [the objective manifestation of her injury]; moreover, the claimant saw a psychiatrist who testified regarding the mental anguish arising from the false report of her mother's death. *Id* at 640-41.

25. Owens did **not** suffer any pecuniary damages, losses, or out-of-pocket expenses arising from Nationwide's, ARS' and Providian's alleged actions. (Nationwide Exhibits "E," int. 9b & 9c; "I," page 52-53) Atlantic Ultraviolet was Owens' employer in 2000 and 2001; it is still Owens' employer. (Nationwide Exhibit "E," int. 1) Owens received all promotions, raises and bonuses due him from Atlantic Ultraviolet since 2001. (Nationwide Exhibits "F," stmt. 18; "I," page 13) Atlantic Ultraviolet **never** disciplined him or took any other action against him due to the purported telephone calls from collection agents. (Nationwide Exhibit "E," int. 9j)  He did **not** lose any income, work days, vacation time, sick days and personal days. (Nationwide Exhibit "E," int. 9g, 9h, 9i)

26. Owens admitted that he did **not** have any physical manifestations of his purported embarrassment and mental anguish. (Nationwide Exhibits "F," stmt. 20; "I," page 54-55)  He did **not** seek any treatment from a doctor, therapist, minister, care giver or anyone else for his purported embarrassment and mental anguish. (Nationwide Exhibits "F," stmt. 16; "I," 56 & 59) He **never** took any medication to treat his purported embarrassment and mental anguish. (Nationwide Exhibits "F," stmt. 17; "I," page 56)  He is **not** adducing any expert testimony concerning his purported mental injuries at trial. (Nationwide Exhibit "I," page 61-62)

27. When pressed to detail his damages, Owens answered that he was "aggravated" and in "bad temper." (Nationwide Exhibit "I," page 53-55) Asked how his

purported mental anguish affected his ability to handle everyday tasks, he concluded "I'm sure it did in small ways." (Nationwide Exhibit "I," page 55)

28. Assuming *arguendo* that Owens' allegations against Nationwide were true, his purported injuries at best qualify as petty oppression. Trivial and/or chimerical mental injuries do **not** sustain a negligence action; accordingly, the Court should dismiss Owens' negligence claim against Nationwide.

WHEREFORE, Nationwide demands the following relief:

(A) – an order granting Nationwide summary judgment, dismissing Owens negligence claim against Nationwide with prejudice;

(B) – an order granting Nationwide such other and further relief that the Court deems appropriate.

Dated: June 1, 2006

s/Lawrence Banigan
Lawrence Banigan (LB 3803)