Charles Owens
32 Smith Street
Amityville, NY 11701
Third Party Plaintiff, Pro Se
(631)273-0500

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 17 2006 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Colorado Capital,

                Plaintiff/Counter Defendant,

vs.

Charles Owens,

                Defendant/Counter Plaintiff/
                Third Party Plaintiff,

vs.

Providian Financial Corp., Golden Wexler & Sarnese,
ARS National Services, Inc. and Nationwide Credit
Inc.,

                Third Party Defendants.

------------------------------------------------------------X

(JS) (WDW)
CV-03-1126

## MEMORANDUM OF LAW IN OPPOSITION MOTIONS FOR SUMMARY JUDGMENT BY THIRD PARTY DEFENDANTS PROVIDIAN FINANCIAL CORP., ARS NATIONAL SERVICES INC., AND NATIONWIDE CREDIT INC.

Third-Party Plaintiff, Charles Owens, appearing Pro Se, respectfully submits this Memorandum of Law in response to the above name Defendant's Motion For Summary Judgment.

## PRELIMINARY STATEMENT

Third Party Defendants Providian Financial Corp., ARS National Services Inc., and Nationwide Credit Inc., have each brought motions for summary judgment to dismiss my claim against each of them for negligent infliction of emotional distress. In order to prevail on their motions the Defendants must show that there are no issues in controversy under which a jury could reasonably find in favor and grant me relief. Each of Defendants motions are without merit and should be denied.

## SUMMARY OF THE FACTS

This is tort action. There are three remaining defendants and I am the only remaining Plaintiff. This dispute developed over an alleged outstanding credit card balance. Providian claimed that I owed them an outstanding sum as a result of a credit card account I had with them. I refused payment based upon a good faith belief that the sum they demanded was at least partly, fraudulent. Providian hired two debt collection firms, ARS National Services and Nationwide Credit to collect the disputed balance from me. In an attempt to collect this disputed account balance, the two debt collection firms violated my rights. I filed suit naming Providian, ARS and Nationwide as Defendants.

## LEGAL ARGUMENT

I.   **PROVIDIAN FINANCIAL CORP.**

Providian Financial makes the following arguments.

    A    <u>There Is No Evidence of Any Negligence By Providian.</u>

As an experienced consumer lender, Providian has had substantial experience employing debt collection firms to collect alleged delinquent accounts.

2

It is reasonable to presume that they were familiar with the two distinct business models employed by the predominant number of firms operating in the U.S. consumer market for debt collection services.

One type of firm is organized as a law firms, and directly employs both lawyers and non-lawyer debt collection agents (Golden, Wexler & Sarnese is an example of ths type of firm). In general those types of firms make small number of contacts by telephone and mail that the law allows. When those collection efforts fail, they typically verify employment and file suit, as the law presumes they will. In addition to the amount collected (which is typically higher than that charged by firm who don't directly employ, lawyers), as Law firms they are allowed to charge the alleged debtor legal fee.

The second type of firm (which ARS and Nationwide are prime examples) employs only non-lawyer debt collection agents. When efforts to obtain voluntary payment fail, they have to make a decision about whether it is financially worthwhile to refer the case to an outside lawyer for a debt collection lawsuit. Since they are not organized as law firms, they are, not allowed to charge the alleged debtor a legal fee.

Through the expert testimony I will show that the usual and customary practice in the consumer debt collection industry is for firms to be hired on a strictly contingent fee basis. They only get paid if they collect the alleged debt. Firms using the law firm model typically keep ½ the amount collected as their fee. In the past firms using the non-law firm model charged approximately 1/3 of the amount collected as their fee. The recent trend has been for firms like Nationwide Credit to attempt to gain a competitive advantage by making calls from India, thereby reducing their costs and the percentage they charge.

Counsel for Providian argues that I am asking the Court to make a sweeping ruling that in

and of its self the act of employing firms using the non-law firm business model, employed by Nationwide and ARS, was negligence. Counsel is mistaken. I am asking the Court to rule that based upon the facts that are peculiar to this case that a jury could reasonably find that Providian acted negligently in hiring firms using the non-law firm business model instead of the law firm model.

Providian claimed that I owed them $464.77. The maximum amount that either Nationwide or ARS could have expected to receive from Providian if they had successfully collected the alleged debt from me was approximately $150 (1/3 of $464.77). Mr. Geiger argues that the debt collection firms with whom Providian contracted had complicated arrangements with outside law firms, and that if we only knew all the facts the whole thing would make perfect sense.

This is one of the oldest known methods of concealing a lie. The simple truth, as Mr. Geiger well knows, is that lawyers don't typically work for free and the money to pay them has to come from some place. If ARS or Nationwide had attempted to farm Providian's claim against me out to an outside law firm, how much of the $150 would they keep and how much would go to the outside firm? It's true that an outside firm could have charged me a fee of approximately $200, but the fact that neither ARS or Nationwide initiated a debt collection law suit against me is a strong indication that no law firm would work for such a drastically reduced fee.

Providian knew about the collection industry's history of abuse that gave rise to the Federal and State laws governing the Industry. They knew or should have known that the firms they hired had substantial fixed and continuing expenses for salaries, employee benefits, staff support and administration, among other things. They knew or should have known that as "For

4

Profit Businesses", Nationwide and ARS would be under pressure from Boards of Directors, investors, and creditors demanding results.

Before they signed a consent decree which barred them from the sub-prime lending market, Providian was an industry leader in lending to borrowers with blemishes on their credit histories. These loan accounts were characterized by low face amounts and high fees and interest charges. My account was typical of the accounts referred to Nationwide and ARS for collection.

Providian knew or should have known that with small face amount accounts such as mine, (which was typical for their credit card business), that there was a substantial risk that the firms they hired would be forced by financial pressures to violate the law and my rights.

B) <u>There Is No Evidence That Any Alleged Negligence Of Providian Was Proximate Cause of Any Damages To Mr. Owens</u>

As your Honor stated in your ruling on the Defendant' FRCP 12 (B) (6) motion . . ." The element of proximate cause is satisfied if a plaintiff can establish that the defendant's negligence was a substantial foreseeable factor in bringing about his or her injury. (Page 16 of Judge Seybert's Order dated March 16, 2005). You stated that . . . "they issue of proximate cause is generally a questions of fact for the jury." <u>See Id.</u> at pg. 16.

In determining the issue of foreseeability it is useful to ask, what Providian's reasonable expectation was at the time they hired Nationwide and ARS. Providian employed Nationwide from Sept. 2000 thru April 2001. At the time they entered into the arrangement they knew about the industry's past history of abuse, and they also should have known about the business model employed by Nationwide and ARS and the financial pressure they would be under. If you give Providian the benefit of any doubt and assume that there was a valid reason for employing

Nationwide for 7 months, what was their reasonable expectation that ARS, (another non-law firm) could do that Nationwide had not.

Because of the past history of abuse the Federal and State laws governing the debt collection industry are very restrictive. My complaint alleges that Golden Wexler and Sarnses violated my rights under the fair debt collection practices act, and they chose to settle without contesting my claim.

However, if Providian had hired a firm who used the law firm business model (like Golden, Wexler), their reasonable expectation would have been that a reasonable attempt to obtain voluntary payment would have been followed by a law suit. No matter how much a law firm violated, my rights, in the absence of a showing a history of abuse, it is unlikely that I could have met the foreseeablity burden of proof. After seven months of Nationwide's lack of success, it was clearly foreseeable that another non-law firm debt collection company would be unable to obtain voluntary payment. Given Providian's long experience it was also clearly foreseeable that ARS might be forced by business pressures to resort to prohibited conduct and violating my rights.

(C)   Mr. Owens Has Not Sustained Any Compensable Damages In This Case.

A claim of negligent infliction of emotional distress is a state law claim, and in the case of Johnson v State of New York, 37 N.Y. 2d 378, 33 4 N.E. 2d 590 (N.Y. Ct. of Appeals, 1975), the New York Court of Appeals said that a showing of physical injury and by implication medical or any other professional treatment was unnecessary. "One to whom a duty of care is owed. . . may recover for harm sustained solely as result of an initial, negligently - caused psychological trauma, but with ensuing psychic harm with residual physical

6

manifestations". 37 NY 2d 378, 380.

Ann Wysocki, a Vice President at the Company, I am employed by, provides an independent verification of the effects I suffered as a result of the harassment by the debt collection firms Providian hired. Because of her concern, she gave orders that any phone call I received at work were to be screened.

Moreover the Affidavits submitted by myself, Ms. Wysocki and Ms. Bartolotta demonstrate that the Defendants acted with intentional indifference to my rights, and engaged in a pattern of intentional harassment to force me to pay. In the case of In Re Baker, 18 B.R. 243; 1982 Bankr. Lexis 4628 (U.S. Bankruptcy Ct., W.D.N.Y., 1982). The Court said that where planned and intentional conduct violates a protected right, causation and damages are virtually presumed. 18 B.R. 243; 1982 Bankr. Lexix 4628.

The Baker Court said the test for determining when damages are compensable is whether "reasonable people under the circumstances" would experience emotional distress. 18 B.R. 243.

I am prepared to assume that Your Honor is a reasonable person. If debt collectors repeatedly called your home and place of employment over the course of a year, even though you asked them to stop, would you be upset?

If they called your home and you hung up, and they called back and allowed your phone to ring and ring and ring and ring, would you be upset? Assume for a moment that you worked in a relatively small building, and rather than having individual private phone lines, your received phone calls on one of several common lines. If you heard a loud speaker announcement (which could be heard through out the building), "Phone call for Judge Seybert on line one", and you answered the phone and hung up when you realized who was calling. Phone call for Judge

7

Seybert on Line 2." Phone call Judge Seybert on Lin 3. Phone Call for Judge Seybert on Line 4. If this happened day after day would you be upset. Suppose a superior noticed what was going on and inquired if there was a problem. Suppose that superior spoke to a third party and gave instructions to have your phone calls screened. Suppose because of practical necessities involved in carrying out the order to screen your calls, the third person had to tell several other people, and before you knew it was common knowledge at your work place that you were being harassed by bill collectors, would you be embarrassed? Would your embarrassment be your fault or the direct result of the harassment by the bill collectors? Would you be outraged at the idea that someone could intrude into your life and trample on your rights anytime they felt like it.

I discussed a personal problem with Ms. Wysocki (a superior at my work place) in a private meeting in her office. Ms. Wysocki gave instructions to a third party, Mrs. Bartolotta (in the same private meeting) to screen my phone calls. In order to carry out Ms. Wysocki's order Ms. Bartolotta had to give instructions to several other people who assist her in answering the telephones. Apparently one of them gossiped.

It is outrageous for the defendants to cause the harassment which made the telephone call screening necessary, and then attempt to claim that they are not the proximate cause of the injury I suffered. When the Defendants began disrupting my work place with their harassment tactics, it was clearly foreseeable that their harassment would have some disruptive effect at my work place. But for the Defendants' harassment at my work place, the embarrassment and emotional distress I suffered there would not have occurred.

I am not asking for your reaction to this hypothetical as a reasonable Judge, because clearly as a Judge the first time you were harassed would also be the last time. You would

8

simply have the offending party arrested. The standard that has to be met to support a claim of negligent infliction of emotional distress is a high one, and one act of harassment might not be sufficient. What if these acts happened repeatedly over the course of a year?

II     <u>ARS National Services</u>

ARS National Services makes the following arguments:

(A)     <u>Plaintiff's Claim Does Not Meet The Burden Necessary To Prove The Elements Of A Claim For Negligent Infliction of Emotional Distress.</u>

In <u>Johnson v. State of New York</u>, 37 N.Y. 2d 378; 334 N.E., 2d 590 (N.Y. Ct. of Appeals, 1975) The New York Court of Appeals was presented with a claim of negligent infliction of emotional distress. The Court described the elements required to be proved as follows:

(1)     Duty of Care;

(2)     Breach of Duty;

(3)     Proximate Cause; and

(4)     Damages.

In the present case at the time ARS National Service (hereinafter ARS) began attempting to collect the money Providian claimed I owed them, I had a number of rights. Among them were the right to a reasonable expectation of privacy, and in general the right to be free from harassment and abuse. In attempting to collect the alleged debt, ARS had a duty to do so in a way that did not violate my rights.

The Affidavits submitted by myself, Ann Wysocki and Carol Bartolotta is evidence that debt collection firms acting on Providian's behalf violated my rights. I know that the firms were

acting on Providian's behalf, because I was a party to the telephone calls that was the source of the harassment. Ms. Wysocki and Ms. Barolotta knew that the calls were on Providian's behalf because I conveyed this information to them at that time that it took place and I showed them a New York Times Article describing how Providian was being prosecuted in California for defrauding 3 million of its account holders of $300 million dollars. I informed them contemporaneously with the events in questions that I was one of Providian's 3 million victims.

In response to an order issued by the Court Christopher Turcotte, Providian's previous lawyer, wrote a letter stating that from Sept. 2000 through April 2001 Providian employed Nationwide Credit to collect the alleged debt from me. Nationwide Credit is the only debt collection firm Providian employed during this time period. They did not employ several firms during this time period, where it could reasonably be argued any number of firms could have been responsible for the calls. Nationwide Credit was exclusively employed during that time period.

Mr. Turcotte's letter states that Associated Recovery Systems ( A Division of ARS National Services) was exclusively employed from May 2001 through November 2001.

ARS's claim that they called me twice and spoke to me only once, and Nationwide's claim that they never spoke to me, stand as a direct contradiction to the sworn statements of Ms Wysocki and Ms. Bartolotta. In effect, they are saying that the harassment did not take place, while Ms. Bartolotta and Ms. Wysocki swear that it did. Ms. Wysocki and Ms. Bartolotta have no vested interest in the outcome of this case and therefore no motive to lie. The job security and career advancement of ARS and Nationwide's employees is dependent upon the testimony they give in this case. Their claims of making an indifferent attempt to collect the alleged debt is

10

lacking in credibility in view of the fact that they were working under a contingent fee arrangement and would have been under the usual pressures for performance that is typical to all for profit businesses. They offer to supplement the self serving testimony of their employees with business records which they created and were under their exclusive ownership and control. A competent computer professional could make those records say anything they wanted them to say.

A jury could reasonably conclude that both ARS and Nationwide probably violated my rights by harassing me and causing me embarrassment. As a matter of law, under the preponderance of the evidence rule probably guilty is the same as guilty.

The element of proximate cause is present because it is clearly foreseeable that calling my place of employment often several times a day over and over a period of months was harassment and would be disruptive and distressful. It was equally foreseeable that calling my home and allowing the phone to ring when I hung and refused to answer, would be distressful.

The element of damages is clearly present and was addressed in my response to Providian's argument that I did not sustain compensable damages.

(B)   <u>ARS Did Owe Me A Specific Duty of Care</u>.

This issue was previously addressed.

(C)   <u>ARS Did Breach Their Duty of Care</u>

This issue was previously addressed. I would however like to take issue with the claim made by counsel for ARS, that the undisputed evidence demonstrates that ARS only called me twice. I have consistently maintained that debt collection firms called me repeatedly for approximately a year on Providian's behalf seeking payment of an alleged debt. Christopher

11

Turcotte's letter establishes a time frame for the harassment and is consistent with the recollection of myself and Ms. Wysocki and Ms. Bartolotta. Notwithstanding the attempts by lawyers representing the various defendant's to put words in my mouth, a jury could reasonably choose to believe me, Ms. Wysocki and Ms. Bartolotta over the witnesses and evidence that the various defendants will present.

(D) <u>ARS Did Cause The Harm Alleged In My Complaint</u>

This issue has been previously addressed.

(E) <u>The Damages I Suffered Are Compensable</u>.

This issue has been previously addressed.

III   NATIONWIDE CREDIT INC.

Nationwide Credit Inc., (hereinafter Nationwide makes the following argument:

(A) <u>Owens' Claim Against Nationwide Is Barred By New York's Statute of Limitations For Negligence</u>

This Argument has been previously addressed in large measure in my response to the Argument advanced by ARS National Services. In addition it is in direct conflict with the Affidavits of myself. Ms. Wysocki, and Ms,. Bartolotaa. A jury could reasonably choose to believe me and my witnesses over Nationwide and their witnesses.

(B) <u>No One From Nationwide Ever Spoke Directly With Owens</u>.

I give the same response as I gave to Nationwide's Argument marked (A).

(C) <u>Nationwide Did Not Cause Owens To Suffer Any Embarrassment Or Humiliation</u>

I give the same response as I gave to Nationwide Arguments marked (A) and (B).

(D) <u>Nationwide Properly Trained and Supervised It's Collection Agents.</u>

12

Counsel for Nationwide is apparently under the belief that I have an obligation to prove that Nationwide was negligent in the training and supervision of it's debt collection employees. Under the Common Law Principal of Respondiat Superior, I need only prove that Nationwide employees' were acting within the scope of their employment when they violated my rights, in order to hold Nationwide liable. O'Boyle v. Avis Rent-A-Car System, 78 A.D. 2d 431, 435 N.Y.S. 2d 296 (1981 App. Div.).

(E)     Owens Did Not Suffer Any Discernible Damages.

I give the same response as I gave to Providians argument.

Conclusion

Under the preponderance of the evidence rule it would not be unreasonable for a jury to find in my favor and grant me relief. Accordingly the Defendant's motions for summary judgment should all be denied.

Dated:     Amityville, New York
           July 14, 2006

*Charles Owens* (signature)

Charles Owens
Defendant/Counter Plaintiff/
*Third Party Plaintiff, Pro Se*
32 Smith Street
Amityville, NY 11701
(631)273-0500

I, CHARLES OWENS, certify that a copy of this Memorandum was sent to the following parties:

(1) Lawrence Banigan, Esq.
HILL & ASSOCIATES
Attorneys for NATIONWIDE CREDIT, INC.
140 Old Country Road
Suite 110
Mineola, NY 11501
(516)248-2259

(2) Christine Fecko, Esq.
MCGUIRE WOODS, LLP
Attorneys for ARS NATIONAL SERVICES INC.
1345 Avenue of the Americas, 7th Floor
New York, New York 10105
(212)548-2100

(3) Alexander Geiger
GEIGER & ROTHENBERG, LLP
Attorneys for PROVIDIAN FINANCIAL INC.
30 Vesey Street, 4th Floor
New York, New York 10017
(212)227-3860

(4) Clerk of the Court

Dated: Amityville, New York
July 14, 2006

Charles Owens
Defendant, Counter Plaintiff, Third-Party
Plaintiff, ProSe
32 Smith Street
Amityville, NY 11701
(631)273-0500

To: Judge Seybert

From: Charles Owens

RE: Colorado Capital v. Owens
v. Providian, et al.
CV 03-1126 (JS)(WDW)

Enclosed is my Memorandum of Law plus enclosures in opposition to Motions for Summary Judgement made by Providian, Nationwide and ARS.

Charles Owen