UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
COLORADO CAPITAL INVESTMENTS, INC.,

         Plaintiff,[1]

-against-                                    MEMORANDUM AND ORDER
                                             03-CV-1126(JS)(MLO)
CHARLES OWENS,

         Third Party Plaintiff.


-against-

PROVIDIAN FINANCIAL CORP.,
ARS NATIONAL SERVICES, INC.,
NATIONWIDE CREDIT, INC.,

         Third Party Defendants.
----------------------------------X

APPEARANCES:

For Third Party Plaintiff:     Charles Owens, pro se
                               32 Smith Street
                               Amityville, New York 11701


For Third Party Defendants:

For Providian Financial
Corp.:                         Alexander Geiger, Esq.
                               Geiger & Rothenberg LLP
                               30 Vesey Street, 4th Floor
                               New York, New York 10105


For ARS National Services:     Christine M. Fecko, Esq.
                               McGuire Woods LLP
                               1345 Avenue of the Americas
                               New York, New York 10105


For Nationwide Credit, Inc.:  Lawrence Banigan, Esq.

---

[1]  The Court notes that the Plaintiff in this caption is
listed as Colorado Capital Investments, Inc. ("Colorado
Capital").  Colorado Capital has since settled with Third Party
Plaintiff, Charles Owens ("Owens").  Thus, this Order deals only
with Owens' third party claims against the Third Party
Defendants.

Hill & Associates
41 Hilton Avenue
Hempstead, New York 11550

SEYBERT, District Judge:

### INTRODUCTION

Pending before the Court are three motions for summary judgment filed by Third Party Defendants, Providian Financial Corp. ("Providian"), ARS National Services ("ARS"), and Nationwide Credit Inc. ("Nationwide") (collectively referred to as "Third Party Defendants"). All three Third Party Defendants claim they are entitled to summary judgment because no material issues of fact exist. For the reasons below, the Court grants all three motions for summary judgment.

### PROCEDURAL BACKGROUND

Colorado Capital, as assignee on a debt owed to Providian, brought suit against Third Party Plaintiff Charles Owens for the amount owed on the debt. (Rule 56.1 Statement of Providian Financial Corp. ("Providian Stmt.") ¶ 8.) Owens asserted counterclaims against Colorado Capital and commenced third party claims against Providian, ARS, and Nationwide. Owens later entered into a settlement agreement with Colorado Capital, pursuant to which the indebtedness was written off; in addition, Owens received a cash payment from Colorado Capital. (Id. ¶ 9.) Despite his settlement and cash payment from Colorado Capital, Owens continued the instant claims against Providian, ARS, and Nationwide. (Id.)

Owens first claims that Providian was negligent in

2

selecting ARS and Nationwide as collection agents for Owens' debt. (Id. ¶ 4.)  Owens' claims against ARS and Nationwide are for negligent infliction of emotional distress.  Owens alleges that ARS and Nationwide frequently phoned Owens, attempting to collect the debt owed.  (Rule 56.1 Statement of Nationwide Credit Inc. ("Nationwide Stmt.") ¶ 5.)  All three Third Party Defendants move for summary judgment.

Providian argues that Owens lacks any evidence of negligent hiring and that Providian's hiring was not the proximate cause of any of Owens' alleged injuries.  ARS and Nationwide claim that Owens cannot establish that either of them ever called him at work nor can he establish any of the essential elements of the claim for negligent infliction of emotional distress.  In addition, Nationwide argues that Owens' negligence claim is barred by the New York statute of limitations.  Finally, all three argue that Owens has not sustained any compensable injuries.

## **FACTUAL BACKGROUND**

Owens had a credit card account with Providian, which he used for purchases.  (Providian Stmt. ¶¶ 1, 2.)  A dispute developed concerning the fees on the credit card, and Owens demanded that Providian reverse the late charges and what he deemed to be other "improper charges" assessed against his credit card account.  (Id. ¶ 4.)  Providian reversed the late charges, but Owens still disputed the remaining balance on the credit card.

(Owens Dep. 67:7-14, Dec. 21, 2005.)  Providian then hired two debt collection agencies, ARS and Nationwide, to collect Owens' debt. (Providian Stmt. ¶ 10.)  Providian thereafter assigned the debt to Colorado Capital.  (<u>Id.</u> ¶ 7.)

According to Owens, between November 2000 and November 2001, he received incessant telephone calls from debt collectors both at home and at work.  (Owens Rule 56.1 Statement ("Owens Stmt.") ¶ 7.)  Owens was employed at Atlantic Ultra Violet Corporation ("Atlantic Ultra Violet") at the time.  Owens contends that ARS and Nationwide made numerous calls to his workplace and about ten calls to his home.  (Owens Dep. 34.)  Because of these alleged calls to his workplace, Owens' supervisor, Ann Wysocki, ordered the company receptionist, Carol Bartolotta, to screen Owens' phone calls.  (Nationwide Stmt. ¶¶ 4-5.)

Despite the alleged frequency of these calls, neither Owens nor Atlantic Ultra Violet kept any records or documentation of the calls to his home or work nor did they have a caller identification system installed at the time.  In addition, at no point, did any of the callers threaten physical harm, use profanities, or impersonate a public official or attorney. Finally, Owens can recall only the substance of one of the calls to his home; in that conversation, a woman stated that Owens would continue to receive calls until he paid his debt.  (<u>Id.</u> ¶ 11.) Owens demands five million dollars in damages.

## DISCUSSION

I.   STANDARD OF REVIEW

A district court may properly grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of proof is on the moving party to show that no genuine issue of material fact exists. See Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994)(citing Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). "[A]ll ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." Id. (citing Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985)).

The court should not grant a defendant's motion for summary judgment unless "the evidence of discriminatory intent is so slight that no rational jury could find in Owens' favor." Gallo, 22 F.3d at 1225. Although the court must construe all evidence in the non-moving party's favor, a party opposing summary judgment may not rely on conclusory allegations or unsubstantiated speculation. See Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 428 (2d Cir. 2001). Rather, to defeat a motion for summary judgment, the non-moving party must show there is a "'genuine issue

5

for trial.'" <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (quoting <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 288, 88 S. Ct. 1575, 1592 (1968)).  It is within this framework that the Court addresses the present summary judgment motion.

II.   <u>Negligence Claim Against Providian</u>

Owens' first cause of action is against Providian for negligently hiring ARS and Nationwide as debt collectors.  ARS and Nationwide are independent contractors of Defendant.[2]  In New York, a party is generally not liable for the negligence of an independent contractor.  <u>See Rosenberg v. Equitable Life Assur. Soc. of U.S.</u>, 79 N.Y.2d 663, 668 (1992); <u>Feliberty v. Damon</u>, 72 N.Y.2d 112, 118 (1998).  However, a wide variety of common law exceptions have developed.  <u>Kleeman v. Rheingold</u>, 81 N.Y.2d 270, 274 (1993).  "These exceptions . . . fall roughly into three basic categories:  [1] negligence of the employer in selecting, instructing or supervising the contractor, [2] employment for work that is especially or inherently dangerous and, finally, [3] instances where the employer is under a specific nondelegable duty."  <u>Id.</u> at 274 (citations and internal quotation marks omitted).

The first exception applies to this case.  Owens contends

_____

[2]  This court has already held that Defendant has an independent contractor relationship with ARS and Nationwide.  <u>See Colorado Capital v. Owens</u>, 227 F.R.D. 181, 188 (E.D.N.Y. 2005).

that Defendant was negligent in hiring because, given its experience in employing collection agencies, it should have known of the risk that the particular ARS's and Nationwide's "business model" would result in unlawful debt collection practice and harassing tactics.

Owens' claims revolve around this suspect "business model." According to Owens, it is one of two models utilized by collection agencies. Collection agencies that use the first model employ lawyers as well as collection agents and typically file suits when collection efforts fail. These agencies charge an increased fee for their additional legal services. Agencies that adopt the second model do not employ lawyers, cannot charge the increased legal fees, and are forced to make decisions as to whether it is financially worthwhile to file suit to pursue the claim. According to Owens, this latter model creates financial pressures on the agencies to collect the debts by any means necessary. These financial pressures — when coupled with a "for profit" business's overhead costs, salary expenses, etc. — typically result in agencies disregarding the legal restrictions on debt collection practices against debtors with small debts.[3]

_____

[3]     Owens claims that he has an expert witness – an attorney who specializes in representing Owens' under the Fair Debt Collection Practices Act - who is willing to testify about the validity of this assertion. (Owens Opp. 3.) Owens is, however, precluded from offering expert testimony, because he never disclosed his intention to do so prior to the close of discovery on January 5, 2006, as required by the Court's

(Owens' Opp. 4-5.)

Owens claims that ARS and Nationwide employ this second model and that Defendant was negligent in hiring ARS and Nationwide because of the likelihood of debtor abuse. Defendant moves for summary judgment, arguing that Owens has no evidence to support his negligence claim, no evidence of proximate causation, nor any compensable damages.

A.   <u>Owens Cannot Support A Negligent Hiring Claim.</u>

Defendant first argues that summary judgment should be granted because Owens cannot point to any evidence to support his claim of negligent hiring. Where, as in this case, "the non-moving party bears the burden of proof at trial, the movant can satisfy his burden of production by pointing out an absence of evidence to support an essential element of the non-movant's case." <u>Ginsberg v. Healey Car & Truck Leasing, Inc.</u>, 189 F.3d 268, 270 (2d Cir. 1999). When a movant points to a lack of evidence to support essential elements of the claim, the non-moving party must go "beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts to show that there is a genuine issue for trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324, 1065 S. Ct. 2548, 2553 (1986) (internal quotation marks omitted); <u>see also</u>

---

scheduling order, dated May 26, 2006. <u>See</u> FED. R. CIV. P. 26(a)(2).

Anderson v. Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511 (noting that "when a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial.") (footnotes and internal quotation marks ommitted).  The evidence must further be "colorable" or "significantly probative."  See id. at 249-50, 106 S. Ct. at 2510-11 (noting that summary judgment may be granted if evidence is not colorable or sufficiently probative).

Owens does not present any colorable or significantly probative evidence in any of the affidavits, depositions, interrogatories, or admissions to show a genuine issue for trial on his negligent hiring claim.  Owens concedes that he does not have any evidence about the process Providian uses to employ debt collection agencies: Owens does not know how much Providian pays the debt collection agencies, and Owens has no tangible information about Providian's failure to use reasonable care in its selection of ARS and Nationwide as collection agents (Owens Dep. 86:2-27). These facts, or the lack thereof, are a far reach from "specific facts" and "colorable" evidence of negligence necessary for Owens to defeat a summary judgment motion.

B.    Owens Cannot Prove Proximate Causation.

Providian further argues that it cannot be the proximate cause of Owens' alleged injuries.  "To carry the burden of proving a prima-facie case, the plaintiff must generally show that the

9

defendant's negligence was a substantial cause of the events which produced the injury." Derdiarian v. Felix Contracting Corp., 51 N.Y.2d 308, 315 (1980) (citations omitted). In this situation, the events which directly caused Owens' alleged injury were the number of calls that the debt collection agencies made to him. (Nationwide Stmt. ¶ 20.) Providian, however, hired ARS and Nationwide to collect the debt, and Providian did not actually make any of the calls that caused the alleged injury. The conduct of ARS and Nationwide is arguably an intervening act between Owens' alleged injury and Providian's conduct.

ARS's and Nationwide's conduct - as an intervening act - does not necessarily sever Providian's liability, however. "In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence." Derdiarian, 51 N.Y.2d at 315. Although determining what is normal and foreseeable is usually a question of fact for the jury, it may be determined as a matter of law if only one conclusion can be drawn from the facts. See id.

As a matter of law, Providian's hiring is not the proximate cause of Owens' alleged injuries. In New York, "the test for determining whether the facts pose a question for resolution by the jury . . . [is to inquire whether] . . . there [is] a valid line of reasoning and [if] there [are] permissible inferences which could possibly lead rational men to the conclusion of negligence on

10

the basis of evidence presented at trial." <u>Parsons v. Honeywell</u>, 929 F.2d 901, 903 (2d Cir. 1991) (citations and internal quotations marks omitted).

 This Court cannot infer that Providian's negligent hiring of a collection agency that used a suspect "business model" injured Owens.  This rather novel argument made by a <u>pro se</u> litigant – that a collection agency with no attorneys on its payroll is forced by financial pressures to use abusive collection tactics – is highly speculative and requires large leaps of logic.  Other than promising to have one inadmissible expert witness who is supposedly familiar with these illicit business models, Owens does not bring forth any other evidence showing how the payment arrangement between the collection firms and their attorneys has any bearing on the number of telephone calls made by those collection firms.  His assertion is too attenuated to support a valid line of reasoning or inference which would lead to a conclusion of abusive debt collection practices, much less of Providian's foreseeing that these abusive practices would occur.  Owens does not purport to have any tangible information whatsoever about Providian's selection process or failure to use reasonable care in its selection of these collection firms.  Therefore, as a matter of law, Defendant did not proximately cause Owens' alleged injuries.

 C. <u>Owens Cannot Prove Compensable Damages.</u>

 Providian finally argues that despite Owens' lack of

evidence, Owens has not suffered any compensable injuries.  Owens concedes that he does not have any pecuniary damages or out of pocket losses arising from the alleged actions of Providian, ARS, or Nationwide.  (ARS Stmt. ¶ 17.)  Rather, his claim for damages is confined entirely to embarrassment and mental anguish.  (Nationwide Stmt. ¶ 13.)

New York prohibits recovery for purely emotional injury except in extremely limited circumstances.  <u>In re Air Crash Disaster at Cove Neck</u>, 885 F. Supp. 434, 438 (E.D.N.Y. 1995).  "In the absence of contemporaneous or consequential physical injury, courts have been reluctant to permit recovery for negligently caused psychological trauma, with ensuing emotional harm alone."  <u>Armstrong v. Brookdale Univ. Hosp. and Med. Ctr.</u>, 425 F.3d 126, 137 (2d. Cir. 2005) (quoting <u>Johnson v. New York</u>, 37 N.Y.2d 378, 381 (1975)).  In New York, a plaintiff may recover for purely emotional damages if the defendant breached a "special duty" directly owed to the plaintiff.  <u>Kelly v. Chase Manhattan Bank</u>, 717 F. Supp. 227, 235 (S.D.N.Y. 1989); <u>Perrin v. Hilton Intern</u>, 797 F. Supp. 296, 299 (S.D.N.Y. 1992).

Providian, however, did not directly owe any special duty to Owens.  Providian owed a duty to all of its debtors when referring their debts to collection agencies.  <u>See</u> <u>Kelly</u>, 717 F. Supp. at 235 (finding no specific duty owed to plaintiff because a corporation has a duty to act honestly and in good faith in all of

12

its employment practices).   Providian therefore owes no direct special duty to Owens.

In addition, Providian's conduct does not fall within the sphere of egregious conduct necessary to impute liability for emotional damages.   Much like the independent torts of intentional infliction of emotional distress and negligent infliction of emotional distress, a cause of action for emotional damages upon a negligence theory must be supported by allegations of conduct by the defendant "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."   Dawkins v. Williams, 413 F. Supp. 2d 161, 178 (N.D.N.Y. 2006) (quoting Dillon v. City of New York, 261 A.D.2d 34, 41, 704 N.Y.S.2d 1 (1st Dep't 1999)).

Providian's conduct is hardly outrageous or extreme. Owens argues that Providian should have been aware of not only the business model utilized by the collection agencies it hires but also that the business model results in abusive collection practices.   Owens, however, has no evidence about any of Defendant's processes for selecting collection agencies. (Providian Stmt. ¶¶ 15-16.) Owens mainly asserts that due to their experience in hiring debt collection agencies, Providian should have been aware that this business model theory would lead to abuse.   However, without some sort of evidence, the business model

theory is just that – a theory.   Owens' argument is far too attenuated to support the claim that Providian's choosing ARS and Nationwide as collection agents was outrageous or extreme conduct.

Owens relies on the <u>Johnson</u> case to argue that despite him having no pecuniary of physical injury accompanying his alleged mental distress, his damages can be presumed.   This reliance is misplaced.   As Owens correctly notes, New York provides recovery for emotional distress without a showing of physical injury where there is an "'especial likelihood of genuine and serious mental distress, arising from . . . special circumstances, which serves as a guarantee that the claim is not spurious.'"   <u>Edwards v. Great N. Ins., Co.</u>, No. 03-CV-2947, 2006 WL 2053717, at *7 (E.D.N.Y. July 21, 2006) (quoting <u>Johnson</u>, 37 N.Y.2d at 382-83).   As held in <u>Johnson</u>, these "special circumstances" have been limited to negligently conveying false news about the death of a family member or to the mishandling of a family member's corpse.   <u>Johnson</u>, 37 N.Y.2d at 382; <u>see also</u> <u>Baker v. Dorfman</u>, 239 F.3d 415, 421 (2d. Cir. 2000) (holding that a New York state court would find a cause of action lies for negligent infliction of emotional distress in the case of a negligent positive result on an HIV test).   Owens' claims of embarrassment and mental anguish stemming from phone calls made to him do not rise to the level of injury necessary to satisfy these special circumstances involving the death of a family member.

In addition, the Court further distinguishes <u>Johnson</u> because the <u>Johnson</u> plaintiff missed 11 months of work after the incident that caused her emotional trauma and offered medical proof that she suffered excessive anxiety as a result of the incident. <u>See</u> <u>Johnson</u>, 37 N.Y.2d at 382.   Owens brings forth no such evidence.   He admits that he did not suffer any disciplinary actions at work due to the alleged calls, was granted all of the raises and bonuses due to him since 2001, never sought any medical or professional help, and did not take any medication in connection with his alleged emotional distress.   (Nationwide Stmt. ¶¶ 14-18) Therefore, <u>Johnson</u> is incongruous with the facts of this case. Owens' injuries do not provide him with any remedy at law.   For the foregoing reasons, Providian's motion for summary judgment is GRANTED.

III. <u>ARS & Nationwide: Negligent Infliction Of Emotional Distress</u>

Owens' next cause of action is against ARS and Nationwide for negligent infliction of emotional distress, stemming from the excessive number of calls allegedly made to his home and work. Both debt collectors move for summary judgment, arguing that Owens fails to bring forth any colorable evidence to demonstrate why summary judgment is not proper, has no evidence that either ever called him at work, fails to establish any of the essential elements of his negligent infliction of emotional distress claim, and cannot show that he suffered any compensable injuries.   In

addition, Nationwide also argues that Owens' claim is barred by the New York statute of limitations.

    A.    <u>Owens Cannot Support A Negligent Infliction Of Emotional Distress Claim.</u>

       As noted earlier with respect to Providian, in a summary judgment motion, "where the non-moving party bears the burden of proof at trial, the movant can satisfy his burden of production by pointing out an absence of evidence to support an essential element of the non-movant's case." <u>See</u> <u>Ginsberg</u>, 189 F.3d at 270.  Similar to the claim against Providian, Owens does not bring forth any colorable or significantly probative evidence that the Defendants used abusive tactics in their debt collection practices.  The suspect business model is again the key factor driving Owens' claim against ARS and Nationwide – in particular that due to this business model and the financial pressures associated with it, the debt collectors used abusive tactics.  Owens' inadmissible expert witness testimony is the only evidence he purports to have.  Because Owens has not provided any evidence in any of his affidavits, depositions, interrogatories, or admissions in the record, he has not met the burden of production necessary to defeat ARS's and Nationwide's summary judgment motions.

    B.    <u>No Evidence Of Any Calls To Owens' Workplace</u>

       Owens fails to offer any evidence that either of the debt collectors ever called him at work.  ARS has submitted to the Court its call records — which it maintains as part of its quality

controls procedures.  The records indicate that ARS representatives called Owens only twice, and neither of these calls were made to Owens' workplace.[4]  (Coffey Aff., Ex. A.)  Nationwide asserts that its activity log shows that its representatives never called Owens at his workplace and that no one from its firm spoke directly with Owens.  Owens provides no colorable evidence to the contrary of either of the Defendants' claims.  He admits that he could not identify the source of the calls nor the number of calls made to his workplace.  (Owens Dep. 60-61.)  It is also established that Atlantic Ultra Violet did not keep records of any of the calls, nor did it have a caller identification system installed at the time.

Owens argues that Ann Wysocki's and Carol Bartolotta's affidavits stand as "direct contradiction" to ARS's claims that it called Owens only twice at home.  (Owens Opp. 10.)  However, in these affidavits, Ms. Wysocki and Ms. Bartolotta do not purport to know the identities of any of the alleged callers nor the substance of any of the calls.  (ARS's Notice of Mot. for Summ. J., Fecko Aff., Ex. G, Wysocki Aff. and Bartolotta Aff.)  Finally, Owens argues that the calls must have come from ARS and Nationwide because they were the only collection agencies employed by

---

[4]     Owens claims that ARS's evidence lacks credibility. (Owens Opp. 10-11.) Nonetheless, such conclusory allegations, unsupported by any tangible evidence, are not enough to create a genuine issue of material fact. See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d. Cir. 1996).  Therefore, Owens' allegations that ARS falsified its records are baseless.

Providian between November 2000 and November 2001, which is within the time period he and his co-workers remember receiving calls. (Owens Opp. 12.)   This argument lacks any merit.   Absent any evidence about the identities of the callers or any specifics about the calls, the Court or a reasonable jury cannot determine that ARS or Nationwide did indeed make the calls.

      C.    <u>Owens Cannot Establish The Essential Elements Of A Negligent Infliction Of Emotional Distress Claim.</u>

        ARS and Nationwide further argue that Owens fails to establish any of the essential elements of negligent infliction of emotional distress in support of his claim.   "The parameters of this tort are extremely narrow." <u>Campoverde v. Sony Pictures Entm't</u>, 01-CV-7775, 2002 WL 31163804, at *13 (S.D.N.Y. Sept. 30, 2002) (citation and internal quotation marks omitted).   Negligent infliction of emotional distress may only be established "in one of two ways: [1] the 'bystander' theory; or [2] the 'direct duty theory.'" <u>Baker v. Dorfman</u>, 239 F.3d 415, 421 (2d. Cir. 2000) (quoting <u>Mortise v. United States</u>, 102 F.3d 693, 696 (2d. Cir. 1996)).   The "bystander" theory requires that the plaintiff observe "serious physical injury or death inflicted by the defendant's conduct on a member of the Owens' immediate family in his or her presence." <u>Baker</u>, 239 F.3d at 421.   The "direct duty" theory requires that the emotional distress be the result of the defendant breaching a duty, owed specifically to the Owens, which unreasonably endangers the plaintiff's own physical safety. <u>See</u>

Baker, 239 F.3d at 421; see also In re Air Crash Disaster, 885 F. Supp. at 438-39; Mortise, 102 F.3d at 696-97.

Neither theory applies here.  To show a direct duty, Owens must establish that the duty owed was "specific to [him], and not some amorphous, free-floating duty to society."  Baker, 239 F.3d at 421.  Here, Owens merely asserts that he has the right to a "reasonable expectation of privacy," "to be free from harassment and abuse," and that ARS and Nationwide had a duty to collect the debt without violating these rights.  (Owens Opp. 9.)  He does not offer any evidence that ARS or Nationwide owed him a unique or special duty that is specific to him and beyond the generalized duty a debt collector owes to all debtors.  Compare Campoverde, 2002 WL 31163804, at *14 (finding that the producers of a talk show owed no specific duty to a plaintiff that they did not owe to all of their guests); St. John v. Rein Teen Tours, Inc., No. 99-CV-2537, 2000 WL 977685, at *2 (S.D.N.Y. July 17, 2000) (finding that, because defendant owed a duty to all members of a teen tour, no specific duty was owed to plaintiff); Mortise, 102 F. 3d at 696-97 (holding that National Guard owed no specific duty to plaintiffs who they "captured," treated like prisoners, and shot with blank bullets during war games), with Perrin v. Hilton Int'l, Inc., 797 F. Supp. at 300 (finding a special duty when defendant undertook to locate the plaintiff's wife and allegedly supplied erroneous information about her); Dana v. Oak Park Marina, Inc., 230 A.D.2d

19

204, 208, 660 N.Y.S.2d 906 (4th Dep't 1997) (finding a special
statutory duty owed to plaintiff).

In addition, even if there was some specific duty owed to
Owens, ARS and Nationwide argue that they did not breach that duty.
"[A] cause of action for either intentional or negligent infliction
of emotional distress must be supported by allegations of conduct
by a defendant so outrageous in character, and so extreme in
degree, as to go beyond all possible bounds of decency, and to be
regarded as atrocious, and utterly intolerable in a civilized
community." Dawkins, 413 F. Supp. 2d at 178 (citing Dillon, 261
A.D.2d at 41, 704 N.Y.S.2d 1) (internal quotation marks omitted));
see In re Baker, 18 B.R. 243, 244 (Bankr. W.D.N.Y. 1982) (internal
quotation marks omitted) (finding that to be deemed outrageous,
there must be evidence that a defendant conducted a planned program
of harassment or threats, by making, for example, abusive, obscene
and threatening phone calls).

To the extent that the statements complained of are true,
Owens can point to no conduct by ARS or Nationwide that would
suffice to meet this very high standard of abuse.  According to
ARS's call records, only two calls were made to Owens' home to
collect the debt, and on only one of those occasions did anyone
speak to Owens.  According to Nationwide's records, although they
made nine to ten calls and left one message for him, no one from
Nationwide ever spoke with Owens. (Nationwide's Letter in Supp. of

20

Mot. for Summ. J.)  Owens also concedes that no one used profane
language, attempted to impersonate an attorney, or threatened him
with violence on any of the calls.  (ARS Stmt. ¶ 11.)  Even if the
Court accepts Owens' claim that he received a total of "ten or
less" calls (Owens Dep. 34.), this number falls far below the
standard of egregiousness necessary to be deemed outrageous.  <u>See</u>,
<u>e.g.</u>, <u>Conboy v. AT & T Corp.</u>, 241 F.3d 247, 258 (2d Cir. 2001)
(dismissing an infliction of emotional distress claim where
plaintiffs received between thirty and fifty phone calls during a
two-month period); <u>Baker</u>, 18 B.R. at 245-46 (finding 100 to 120
telephone calls to Owens, his family, and employees, numerous
letters, and two personal visits to Owens' office did not
constitute extreme and outrageous conduct).

    D.   <u>Owens Does Not Provide Evidence Of Causation.</u>

      Furthermore, Owens fails to provide any evidence of
causation of his alleged injuries.  Of the ten to twelve calls he
claims he received, Owens admits he does not know whether it was
ARS or Nationwide calling him.  During the period in dispute, he
did not have caller identification installed and did not keep a log
of any of the calls.  Therefore, despite having individual claims
against them, Owens cannot prove specifically who caused any of his
alleged injuries - ARS or Nationwide.  Relying on the <u>Baker</u> case,
Owens argues that he does not need to prove causation and damages
as elements of his claim.  (Owens Opp. 7.)  The <u>Baker</u> court,

however, stated that causation is presumed only if the conduct is found to be outrageous or intentional. <u>Baker</u>, 18 B.R. at 245. Because neither ARS's nor Nationwide's conduct was outrageous or intentional, causation cannot be presumed.

  E. <u>Owens Cannot Establish Compensable Damages.</u>

   Like Providian, ARS and Nationwide also argue that even if Owens did receive calls from them as alleged by Owens, they are still not liable to Owens because Owens suffered no compensable injuries.  As noted earlier, to recover under the "direct duty" theory of negligent infliction of emotional distress, Owens must prove either that his physical safety was in danger or that he feared for his physical safety.  <u>See Mortise</u>, 102 F.3d at 696-97; <u>E.B. v. Liberation Publ'ns, Inc.</u>, 7 A.D.3d 566, 567, 777 N.Y.S.2d 133 (N.Y. App. Div. 2d Dep't 2004). Owens, however, has never alleged that his physical safety was in danger or that he feared for his physical safety.  Instead, his claims are based on embarrassment and mental anguish. (Nationwide Stmt. ¶ 13.)

   Owens nonetheless again argues that the <u>Johnson</u> case makes it unnecessary to prove damages.  However, as discussed earlier, the <u>Johnson</u> exceptions do not apply to this case. Accordingly, Owens cannot establish damages and thus, his claim for negligent infliction of emotional distress fails.

  F. <u>Nationwide's Statute Of Limitations Argument Does Not Sway The Court.</u>

   Finally, Nationwide argues that Owens' claim is barred by

the New York statute of limitations.[5]   Due to lack of evidence, however, the Court rejects this argument.   New York has a three year statute of limitations for personal injury actions.   See N.Y. CPLR § 214(5) (McKinney 2007).   The time accrues from the date of the incident.

Owens filed his summons and complaint against Nationwide on March 9, 2004.   Nationwide claims that its records, which were not provided to the Court, indicate that its last attempt to contact Owens was via letter on December 14, 2000.   Nationwide was employed as Providian's collection agent from September 2000 to April 2001.   (ARS's Notice of Mot. for Summ. J., Fecko Aff., Ex. G., Letter from Christopher Turcotte.)   Nationwide possibly contacted Owens in March of 2001.   Absent evidence to the contrary, this Court cannot give credence to Nationwide's statute of limitations argument.   Whether the statute of limitations bars the claim is inconsequential to this motion.   Owens' claim cannot survive summary judgment due to the other aforementioned reasons.

For all of the above reasons, Owens cannot recover for negligent infliction of emotional distress against ARS or Nationwide, and both their summary judgment motions are GRANTED.

_____

[5]   ARS does not make this claim nor can it because its records clearly indicate that it called Owens in May and June of 2001.   (ARS's Notice of Mot. for Summ. J., Coffey Aff., Ex. A.)

## CONCLUSION

For all of the foregoing reasons, this Court GRANTS in their entirety all three motions for summary judgment brought by Third Party Defendants Providian, ARS, and Nationwide.  The Clerk of the Court is ordered to mark this matter as CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     March 26, 2007
           Central Islip, New York

24